E. F. YOUNG AND J. R. YOUNG v. H. W. LUCAS AND WIFE, CALLIE LUCAS.

(Filed 13 October, 1937.)

**Attorney and Client § 9—Evidence held insufficient to hold wife liable for attorney fees in action against husband in which she was not a party.**

> In this action by attorneys against husband and wife to recover fees for professional services, the evidence favorable to plaintiffs tended to show that the husband had deeded land to the wife subject to a mortgage, that plaintiffs' services were rendered in an action against the husband alone to foreclose the mortgage, and that the wife knew of the action and that it had been advantageously settled by compromise, and that there was no contract made directly between the wife and plaintiffs. *Held:* The evidence is insufficient to be submitted to the jury on the question of the wife's authorization of the employment of plaintiffs for her or on an implied contract by her to pay plaintiffs, and the wife's motion to nonsuit should have been allowed.

CONNOR, J., concurring.

BARNHILL, J., dissenting.

CLARKSON and DEVIN, JJ., concur in dissenting opinion.

CIVIL ACTION for professional services rendered before *Harris, J.,* at June Term, 1937, of HARNETT. Reversed.

*Godwin & Guy for plaintiffs, appellees.*
*J. R. Hood for feme defendant, appellant.*

SCHENCK, J. This action was instituted in recorder's court of Dunn to recover attorneys' fee for professional services alleged to have been rendered in an action in the Federal Court by the Virginia Trust Company against H. W. Lucas. The plaintiffs obtained judgment and the defendants appealed to the Superior Court, where plaintiffs again obtained judgment and the *feme* defendant, Callie Lucas, appealed to the Supreme Court, assigning as error the court's refusal to allow her motion for judgment as in case of nonsuit made when the plaintiffs had introduced their evidence and rested their case and renewed after all the evidence was in. C. S., 567.

We are of the opinion, and so hold, that the trial judge erred in refusing to allow the appellant's motion. The evidence was to the effect that the action in the Federal Court, wherein the alleged services were rendered, was against the male defendant; that the *feme* defendant, the appellant, was not a party thereto. The plaintiff E. F. Young testified: "I do not recall that his wife (the appellant) ever went to my office prior to the settlement (of the case in the Federal Court). I never had any conversation or contract with her about it." All that the evidence, taken in the light most favorable to the plaintiffs, tends to prove is that the appellant was the wife of her codefendant, that the land, the foreclosure of a deed of trust on which was the subject of the action in the Federal Court, had, prior to the action of foreclosure, been deeded by her codefendant to her, and that she knew of the action in the Federal Court, and that said action had been advantageously settled by compromise. This was not sufficient to carry the case to the jury upon the theory that the *feme* defendant, appellant, authorized the employment for her of the plaintiffs, or that there was an implied contract by her to pay the plaintiffs.

For the error assigned, the judgment against the appellant is
Reversed.

CONNOR, J. I concur in the judgment of this Court, reversing the judgment of the Superior Court, on the ground that there was no evidence at the trial tending to show that the appealing defendant is liable to the plaintiffs for their fee for services rendered to her husband in an action to which she was not a party.

The question as to whether the appealing defendant is under a moral obligation to pay plaintiffs' fee is not presented to this Court. I therefore refrain from expressing any opinion as to the answer to that question. It is true that the defendant H. W. Lucas had conveyed to the defendant Callie Lucas the land which he had theretofore conveyed by the mortgage which the Virginia Trust Company had sought to foreclose by the action in the Federal Court. She was not liable for the

indebtedness secured by the mortgage, and had a right to look to her grantor to protect her interest in the land. This he undertook to do, by employing the plaintiffs to defend the action. Her grantor did not call upon her to defend the action, nor did the plaintiffs, who knew that she was the owner of the land subject to the mortgage, notify her that they looked to her for their fee for services in defending the action against her husband. I do not think that she owed plaintiffs any legal duty to pay their fee.

BARNHILL, J., dissenting: In addition to the facts cited in the opinion of the Court, the record discloses that H. W. Lucas conveyed to his wife, Callie Lucas, the *feme* defendant, a tract of land subject to a mortgage in the sum of $4,785.72; that thereafter, on 31 March, 1930, the Virginia Trust Company, holder of the mortgage, instituted a foreclosure suit against H. W. Lucas; that H. W. Lucas employed the plaintiffs to defend said suit; that after considerable effort the plaintiffs arrived at a compromise settlement in said suit, under the terms of which, by the payment of $1,500 cash, a reduction of $2,000 in the amount claimed was allowed by the Virginia Trust Company and an extension of time was granted for the payment of the balance. It does not appear that the Virginia Trust Company was seeking a personal judgment. Therefore, the only issue involved was the foreclosure of the property of the *feme* defendant. H. W. Lucas had no interest therein except to protect the property of his wife. She was the only one who stood to lose or gain by the suit.

The appealing defendant testified: "I heard them talking of the big suit brought by the Virginia Trust Company. My husband has always attended to things of this kind. He attends to things like the lawsuits and the larger things. At the time the suit was brought I had a deed to me for this land. . . . I heard my husband talking about having Mr. Young in the case at Raleigh. I heard talk about the settlement of the suit. I don't remember how much the cash payment was. I knew it took some cash." She further testified that she advanced part of the money the Virginia Trust Company required to be paid in cash in order to effect the settlement, and that she knew her husband was executing a chattel mortgage upon the crops raised on her land to secure the payment for the fertilizers advanced by the plaintiff. "He told me that Mr. Young was going to let him have $268.00, provided he would make him a note for his fee and all. I gave him the cash before he made the note. The note was paid." The plaintiff testified, referring to the $1,500 advanced, that "They paid me back." This is not denied by the defendant.

It would appear from this evidence not only that the *feme* defendant's husband usually looked after the suits and larger things in which the

defendant was interested, thus creating in him an implied agency to represent her, but that this defendant, with full knowledge that her husband was acting for and in her behalf in seeking to prevent a foreclosure of her land, acquiesced therein, conversed with him about it, furnished money to effect the settlement, took the full benefits of the settlement, and now refuses to pay.

Slight evidence of the agency of the husband for the wife is sufficient to charge her where she receives, retains and enjoys the benefit of the contract.    30 C. J., page 622.

Payments made by the principal on account of benefit received may amount to a ratification of the agent's unauthorized act in procuring the benefits, where at the time of the payments the principal has full knowledge of the transaction.   *Williams v. Crosby Lumber Co.,* 118 N. C., 928.

On the facts appearing in this record, I am of the opinion that this defendant is charged with the moral obligation and the legal duty to pay plaintiff for his services.

I am authorized to say that MR. JUSTICE CLARKSON and MR. JUSTICE DEVIN concur in this dissent.